# RECORD NO. 15-1514

### In The

# United States Court Of Appeals
## For The Fourth Circuit

## MARILYN ALTIZER,

*Plaintiff – Appellant,*

### v.

## TOWN OF CEDAR BLUFF VIRGINIA;
## JAMES K. MCGLOTHLIN, individually and in his own official capacity as Town Manager,

*Defendants – Appellees.*

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF VIRGINIA AT ABINGDON

_____

## BRIEF OF APPELLANT
_____

**Michael A. Bragg**
**BRAGG LAW, PLC**
**432 East Main Street, Suite E**
**P.O. Box 1866**
**Abingdon, VA  24212**
**(276) 628-9160**

*Counsel for Appellant*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. _____      Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____

(name of party/amicus)

_____

 who is _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?      YES      NO

2.      Does party/amicus have any parent corporations?      YES      NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?      YES      NO
        If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct
        financial interest in the outcome of the litigation (Local Rule 26.1(b))?        YES      NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)      YES      NO
        If yes, identify any publicly held member whose stock or equity value could be affected
        substantially by the outcome of the proceeding or whose claims the trade association is
        pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?                            YES      NO
        If yes, identify any trustee and the members of any creditors' committee:

Signature: _____        Date: _____

Counsel for: _____

## CERTIFICATE OF SERVICE
**************************

I certify that on _____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

_____                          _____
        (signature)                                                (date)

# TABLE OF CONTENTS

**Page:**

TABLE OF AUTHORITIES ................................................................ iii

STATEMENT OF SUBJECT MATTER AND
APPELLATE JURISDICTION ...........................................................1

STATEMENT OF THE ISSUES.........................................................1

STATEMENT OF THE CASE ............................................................2

SUMMARY OF ARGUMENT ...........................................................6

ARGUMENT .....................................................................................7

    STANDARD OF REVIEW ........................................................7

I.    THE TRIAL COURT ERRED IN GRANTING SUMMARY
    JUDGMENT ON THE FIRST AMENDMENT
    RETALIATION CLAIM ....................................................7

    A.    INTRODUCTION ................................................7

    B.    ALTIZER'S HUSBAND ADDRESSED MATTERS OF
    PUBLIC CONCERN AS A CITIZEN.......................9

    C.    THE TRIAL COURT ERRED IN FINDING THAT
    MCGOTHLIN WAS ENTITLED TO QUALIFIED
    IMMUNITY ON THE FIRST AMENDMENT CLAIM ........13

    D.    A GENUINE ISSUE OF FACT IS RAISED AS TO
    WHETHER TIM ALTIZER'S SPEECH WAS A
    "SUBSTANTIAL FACTOR" IN THE DISCHARGE OF
    MARILYN ALTIZER ............................................14

i

      E.     THE TOWN IS LIABLE FOR MCGOTHLIN'S ACTS
             TAKEN AS PART OF OFFICIAL POLICY ...........................16

   II.    THE TRIAL COURT ERRED IN GRANTING SUMMARY
         JUDGMENT ON THE STATE LAW WRONGFUL
         DISCHARGE CLAIM ........................................................18

CONCLUSION ....................................................................................21

REQUEST FOR ORAL ARGUMENT ................................................22

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)........................................................................7

*Bowman v. State Bank of Keysville*,
    331 S.E.2d 797 (Va. 1985) ...................................................18, 19

*Connick v. Myers*,
    461 U.S. 138 (1983)...........................................................8, 11, 12

*Couch v. Jabe,*
    679 F.3d 197 (4th Cir. 2012) ..........................................................7

*Dash v. Mayweather*,
    731 F.3d 303 (4th Cir. 2013) ..........................................................7

*DiMeglio v. Haines*,
    45 F.3d 790 (4th Cir. 1995) ..........................................................13

*Durham v. Jones,*
    737 F.3d 291 (4th Cir. 2013) ...................................................11, 12

*Kirby v. City of Elizabeth City,*
    388 F.3d 440 (4th Cir. 2004) ....................................................8, 20

*Maciariello v. Sumner,*
    973 F.2d 295 (4th Cir. 1992) ........................................................12

*McCarthy v. Tex. Instruments, Inc.*,
    999 F. Supp. 823 (E.D. Va. 1998) ................................................19

*McVey v. Stacy*,
    157 F.3d 271 (4th Cir. 1998) ....................................................8, 14

iii

*Miller v. SEVAMP, Inc.*,
    362 S.E.2d 915 (Va. 1987) ...........................................................................19

*Pembaur v. City of Cincinatti*,
    475 U.S. 469 (1989)....................................................................................18

*Riddick v. Sch. Bd. of the City of Portsmouth*,
    238 F.3d 518 (4th Cir. 2000) ......................................................................16

*Robinson v. Balog*,
    160 F.3d 183 (4th Cir. 1998) ........................................................................8

*Shaw v. Stroud*,
    13 F.3d 791 (4th Cir. 1994) ..........................................................................8

*Storey v. Patient First Corp.*,
    207 F. Supp. 2d 431 (E.D. Va. 2002) ..........................................................19

**Statutes:**

28 U.S.C. § 1291 ..............................................................................................1

28 U.S.C. § 1331 ..............................................................................................1

42 U.S.C. § 1983...........................................................................................1, 18

Va. Code § 15.2-1512.4 ...............................................................................19, 20

**Rule:**

Fed. R. Crim. P. 56...........................................................................................7

**Constitutional Provisions:**

U.S. Const. Amend I ..............................................................................*passim*

U.S. Const. Amend V............................................................................................1

**Other:**

Town Of Cedar Bluff Charter § 3-91.........................................................................17

Town Of Cedar Bluff Charter § 3-912................................................................. 17+

## STATEMENT OF SUBJECT MATTER AND
## APPELLATE JURISDICTION

This case is  a federal subject matter case brought by Marilyn Altizer claiming a violation of civil rights pursuant to 42 U.S.C. § 1983.  Trial Court jurisdiction was founded on 28 U.S.C. § 1331.

On April 17, 2015, the Trial Court granted Summary Judgment to the Defendants and entered a Final Order dismissing the case.  (JA 375)  The Notice of Appeal was filed timely on May 8, 2015.  (JA 376).  This Court has appellate jurisdiction of the appeal of a final order under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. **Whether the Trial Court Erroneously Failed To Draw Reasonable Factual Inferences In Plaintiff's Favor In Its Summary Judgment Analysis?**

2. **Whether The Summary Judgment Record Supports A Reasonable Factual Inference That Plaintiff's Husband Was Addressing Matters of Public Concern When He Spoke to the Town Council At Its Regular Public Meeting?**

3. **Whether A Jury Might Draw A Reasonable Inference That Marilyn Altizer Was Fired In Retaliation For Her Husband's Public Comments Exposing The Town Of Cedar Bluff's Financial Mismanagement?**

**4.     Whether The Trial Court Erred In Finding That the Town Manager Was Entitled To Qualified Immunity Because Whether the Altizer Speech Was A Matter of Public Concern Was A Grey Area?**

**5.     Whether The Trial Court Erred In Holding That the Town Manager Was Not a Policy Maker With Regard To Terminating Employment?**

**6.     Whether The Trial Court Erred In Granting Summary Judgment On The Virginia State Law Wrongful Discharge Claim?**

### STATEMENT OF THE CASE

This case was brought for violation of civil rights under Section 1983 by Marilyn Altizer and her husband, Tim Altizer, alleging that she was discharged as an employee of the Town of Cedar Bluff, Virginia, in retaliation for the exercise of speech protected by the First Amendment at the regular meeting of the Cedar Bluff Town Council on May 14, 2013. The speech was made by Tim on Marilyn's behalf. Marilyn also alleges a violation of the Fifth Amendment and a state claim under Virginia law for wrongful discharge. The defendants are the Town of Cedar Bluff (hereinafter the Town) and James McGlothlin, the Town Manager. (hereinafter McGlothlin).

The Trial Court dismissed Tim's First Amendment claim for lack of standing and the case proceeded with Marilyn as the sole Plaintiff. Tim does not appeal his dismissal from the case.

Marilyn was employed by the Town as assistant Town Clerk for a period in excess of thirty years until her termination on May 17, 2013, three days after the May 14, 2013, Council meeting at which Tim Altizer addressed wrongdoing in the transmittal of deferred compensation withheld from her earnings. McGlothlin was her supervisor. He was off work on the days of May 15 and 16 following the Council meeting conducted on the evening of May 14.

As part of Marilyn's compensation, amounts were withheld from her paycheck as a part of deferred compensation plan governed by §457 of the Internal Revenue Code. The amounts would vary between $106.88 and $119.77 from each of Mrs. Altizer's biweekly paychecks. (Opinion, page 2, JA 353). In April of 2013, Ms. Altizer reviewed a quarterly statement for the first quarter of 2013 from the third-party Plan Administrator, VALIC, and observed that the statement showed no contributions received into her § 457 account during the quarter even though amounts had been regularly withheld from each biweekly paycheck during that period. Marilyn was aware that checks had been written to VALIC each pay period and the Town Council had regularly approved the payments.

She and her husband contacted Jerry Herron, the Town Mayor, who asked her to meet him at the municipal building on Monday morning. At that time, he came from a meeting with McGothlin and was informed that McGothlin had transferred money from another account and the withholdings would be sent to VALIC. Herron told Marilyn not to talk about the problem with anyone. (Affidavit of Marilyn Altizer, Paragraph 8; JA 256).

She had her husband were not satisfied. They were aware that town sales tax revenues had decreased substantially while the Town had undertaken an expensive project, championed by McGothlin, to establish a fire department. They spoke privately to various members of the Town Council and were told to wait for an explanation. (*Id.*)

Marilyn learned that until the second quarter of 2010, the Town would transmit the withheld compensation to VALIC within a couple of weeks, but at that time McGothlin started holding the checks for periods of up to four months. The dates that the contributions were received by VALIC is summarized on Altizer's Exhibit, JA 287. As was discovered, the Town did not have sufficient funds to pay the contributions when the same were withheld and checks written and approved by the Town Council. Other payments were also held. Other obligations would be paid from the account during the period that the Altizer checks were held by McGothlin.

Tim Altizer met with McGothlin on April 18, 2013. McGothlin told him he should have fired Marilyn when she spoke to the Council members concerning his conduct. McGothlin told him that there was no grievance policy and his decision was final. (Affidavit of Tim Altizer, paragraph 2, JA 291).

Having received no satisfactory explanation of why the Town was unable to pay the withheld compensation over to VALIC when earned and checks written, the Altizers made a report to the Virginia State Police and Tim requested that he be placed on the agenda for the May 14, 2013, Town Council meeting. It was decided that Tim would address the Council instead of Marliyn because she was not a public speaker.

As Tim started his address to the Town Council, he was asked by the Mayor whether he was speaking for all the town employees. He stated that he was not. He then addressed the Town's financial problems, what he considered efforts to hide the town's business from the public by wrongfully going into executive session, and the concerns he had with checks being held. He specifically asked the Council to hire an independent party to investigate the financial situation.

After Tim's remarks, McGothlin stated to the Council that Marilyn was the cause of the Town's financial problems. Because of that statement, Marilyn asked to speak at the end of the meeting, during a period reserved for public comments to make clear that she was trying to do her job and was not the cause of the financial

5

crisis. During her talk, McGothlin continually interrupted her and stated that she should be more cooperative with him. She stated that it was hard to cooperate with him when he belittled her, calling her names such as "trailer trash butthole."

Marilyn was fired by McGothlin on May 17, 2013. He had been out of the office on the intervening days following the May 14 meeting.

## SUMMARY OF ARGUMENT

The Trial Court in granting summary judgment failed to view the facts and draw reasonable inferences in the light most favorable to Marilyn Altizer. After learning that the Town Manager would hold payments of deferred compensation which had been withheld from employee's compensation and approved by the Town Council for payment to the retirement plan administrator for months because the Town did not have sufficient funds in its regular general account, Altizer's husband requested that he be placed on the agenda to address the Town Council during its regular meeting. He then addressed those issues and others, such as concerns with the manner in which the Council would go into executive session. The Trial Court found that his statements did not address a matter of public concern because he stated in his deposition testimony that he was speaking only on behalf of his wife. His explanation was that he had not been authorized to speak for any other employees. That issue presented an issue of fact to be decided by a

jury.  The Trial Court did not examine those facts in the light most favorable to Altizer.

That same error was committed in the Trial Court's analysis of whether Altizer came forward with evidence to show that she was fired in retaliation for her husband's speech.

## ARGUMENT

## STANDARD OF REVIEW

The standard of review on the granting of summary judgment is de novo. The appellate court shall apply the same standard as the trial court, without deference to the trial court.  *Couch v. Jabe*, 679 F.3d 197, 200 (4th Cir. 2012); *Dash v. Mayweather*, 731 F.3d 303 (4th Cir. 2013).

## I.

## THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON THE FIRST AMENDMENT RETALIATION CLAIM

## A.

## INTRODUCTION

Summary Judgment cannot be granted except in the absence of disputed material fact.  F.R.C.P. 56.  A genuine issue of fact exists where a "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "[T]he court is required to view the facts and draw

reasonable inferences in a light most favorable to the nonmoving party." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

The elements of a public employee's claim for retaliatory discharge in violation of the First Amendment are:

> (1) whether the public employee was speaking as a citizen upon a matter of public concern or as an employee about a matter of personal interest; (2) whether the employee's interest in speaking upon the matter of public concern outweighed the government's interest in providing effective and efficient services to the public; and (3) whether the employee's speech was a substantial factor in the employee's termination decision. *McVey v. Stacy*, 157 F.3d 271, 277–78 (4th Cir. 1998).

The Trial Court granted summary judgment under the first and third factors. In doing so, the Trial Court failed to draw reasonable inferences in Ms. Altizer's favor.

"Speech involves a matter of public concern when it involves an issue of social, political, or other interest to a community." *Kirby v. City of Elizabeth City*, 388 F.3d 440, 446 (4th Cir. 2004). Courts should examine the "content, form, and context of a given statement" to determine whether it addresses a matter of public concern. *Connick v. Myers*, 461 U.S. 138, 142 (1983). The fact that the speech occurred in a public meeting also supports the fact that the speech addresses matters of public concern. *See Robinson v. Balog*, 160 F.3d 183 (4th Cir. 1998).

8

## B.

## ALTIZER'S HUSBAND ADDRESSED MATTERS
## OF PUBLIC CONCERN AS A CITIZEN

Tim Altizer described the decision to speak to the Town Council in its regular session in his affidavit. (JA 291, et seq.) After discovering that the deferred compensation which had been withheld from Marilyn's paycheck had not been paid during the first quarter of 2012, she and Tim had raised the problem and were told that McGlothlin had, in response, made the payments from a separate account. They had received no further explanation of what had happened,

Altizer addressed at the council meeting the questions of whether McGlothlin was holding the checks after Council approval with Council's knowledge and consent, whether McGlothlin was embezzling, whether the Council was hiding the Town's financial instability by pretending to pay obligations when it had not (by "approving" checks for payment), why the Town might think it proper to hold the deferred compensation held in trust, and whether McGothlin had access to other public accounts he could draw on without Council approval. (*Id.*, 292).

Altizer also "expressed concern that the Council's use of executive sessions was in violation of law and was emblematic of the Council's desire to hide the bad financial management from the public, especially as it relates to the establishment of a fire department and the loss of sales tax revenues." (*Id.*)

9

Those matters clearly would be issues of public concern, beyond the individual mistreatment suffered by Marilyn as an employee.  Questions of financial instability arising from the loss of sales tax revenues, the substantial public investment in a fire department, the inability to pay financial obligations causing the Town to use employee compensation earned and withheld to pay ongoing obligations, and the existence of a separate account used for other purposes while the general operating account was in the red all point to matters of public concern.

The Trial Court, however, found that Tim Altizer's deposition testimony showed that he was speaking only to his wife's private employment grievance. (Opinion, pp. 9-10), JA 361-362), focusing on his testimony that:

> No . . . my comments regarding the salary deferral plan will only be on behalf of my wife. There's other employees, you know, there's other town employees here. Their monies was [sic] handled the same way. You know, if they would like to make comments regarding this matter, that's for them, but I'm only speaking on behalf of my wife.

That testimony is found at page 21 of his deposition.  (JA 41).  That statement was made in response to a question asked by the Mayor as he began his speech "Are you speaking on behalf of all the employees?"  (*Id.*)  Altizer stated in his affidavit that he meant, by that answer, that he had not been authorized by anyone else to speak for them.  (JA 292, Paragraph 5)

Altizer in his deposition stated that he showed to the Council how withheld deferred compensation payments had been regularly paid up through the second quarter of 2010 then became erratic. He raised the question of whether laws were violated and stated that the Council should employ an independent professional to investigate and determine whether laws were breached. (JA 42). Thus, Tim Altizer plainly was raising the issue of illegal actions and public financial impropriety in his remarks.

Altizer's answer made at the meeting that he was not speaking on behalf of all employees may reasonably be understood as a disclaimer of authority as explained by Altizer. The Trial Court erred by failing to draw that reasonable inference in Altizer's favor for purposes of summary judgment analysis. A genuine issue of fact exists, on this record, as to whether the speech by Tim Altizer was protected speech directed at a matter of public concern.

This Court's most recent opinion on whether speech involves a matter of public concern is *Durham v. Jones*, 737 F.3d 291 (4th Cir. 2013). That opinion, following *Connick*, found that the plaintiff's speech did involve matters of public concern. An extended quotation from that opinion demonstrates how the Altizers' speeches were, in fact, regarding matters of public concern:

> Unlike in *Connick*, Durham did in fact "seek to inform the public," 461 U.S. at 148, of how his superiors were instructing him to revise his reports in a way that he, as the only percipient witness to the events, knew and believed to be false. Durham sought "to bring to

11

light actual or potential wrongdoing," *id.* , on the part of his superiors, calling for an external investigation and media coverage. In his explanatory letter included with the other materials, Durham outlined the circumstances of his superiors asking him to falsify police reports and submit unwarranted charges against the suspect in the August 21, 2008 incident, on the unmistakable pretextual basis that doing so would pretermit a citizen complaint or a damages lawsuit. As we held in *Maciariello v. Sumner*, 973 F.2d 295, 300 (4th Cir. 1992), "an allegation of evidence tampering by a high-ranking police officer is a matter in which the public should be interested." Durham was disturbed by the misconduct he saw in the SCSO, and which he experienced first-hand, and he felt that it needed public attention in order to be remedied. 737 F.3d at 300.

Here, the Altizers felt that the situation required public attention. Nothing had been done to explain why McGlothlin had taken the action or whether he had done so unilaterlally or with the assent of some or all of the Town Council. Mayor Herron had directed Marilyn not to speak to anyone about the situation. That demand was for her to participate in and support the coverup and to herself violate the law. Sufficient time had been afforded to allow him to investigate and bring matters to light, but nothing was coming to light. Under those circumstances, the implication of that order was that Herron wanted to cover up the wrongdoing. Public comment at the Council meeting was the only way of bringing the matter to the attention of the public and the press. Tim Altizer specifically requested at the Council meeting that an investigation be conducted.

## C.

## THE TRIAL COURT ERRED IN FINDING THAT MCGOTHLIN WAS ENTITLED TO QUALIFIED IMMUNITY ON THE FIRST AMENDMENT CLAIM

The Trial Court found that McGothlin would be entitled to qualified immunity on the First Amendment claim because although he would be held to know that it is unlawful to retaliate against a public employee for exercise of First Amendment speech, it would not have been clear to him that Tim Altizer's speech to the Town Council was on a matter of public concern.  (JA 366) and ""[O]nly infrequently will it be 'clearly established' that a public employee's speech on a matter of public concern is constitutionally protected, because the relevant inquiry requires a 'particularized balancing' that is subtle, difficult to apply, and not yet well-defined." *DiMeglio v. Haines*, 45 F.3d 790, 806 (4th Cir. 1995)"

While it may generally be difficult to appraise whether speech is constitutionally protected, that difficulty does not exist here.  Tim Altizer, on behalf of his wife, publicly exposed McGothlin's wrongdoing, specifically questioned whether McGothlin had violated laws, and requested that the Town Council engage an independent investigation.  Altizer was questioning, at the least, McGothlin's competency and, at the worst, his honesty.

13

Under those circumstances, it would be clear to McGothlin that the speech was a matter of public concern, viz. his conduct as a public official, and qualified immunity would not be defense available to cloak his actions.

## D.

### A GENUINE ISSUE OF FACT IS RAISED AS TO WHETHER TIM ALTIZER'S SPEECH WAS A "SUBSTANTIAL FACTOR" IN THE DISCHARGE OF MARILYN ALTIZER

The Trial Court erred in finding that there was no genuine issue of fact as to "whether the employee's speech was a substantial factor in the employee's termination decision." *McVey v. Stacy*, 157 F.3d 271, 277–78 (4th Cir. 1998). The Trial Court found that Ms. Altizer had been warned for alleged problems in job performance (primarily for failing to timely do cut-off orders for delinquent utility payments). However, it is clear that the Trial Court found that the Town could have fired Ms. Altizer because of "heated" words with Mr. McGothlin during the May 14 Council meeting, including her statement that McGothlin previously had called her a "trailer trash butthole." (Opinion pp.13-14, JA 13-14).

The totality of the evidence would allow a jury reasonably to conclude that Ms. Altizer was fired for the public exposure of the Town's wrongdoing and financial mismanagement. First, if Marilyn's statements at the May 14 meeting were so egregious, she would have been terminated immediately. Her alleged poor

14

job performance had been counselled and she was performing as required after the counselling. However, there is more evidence of pretext.

On March 25, 2013, Marilyn met with McGothlin and the Town Mayor and was given a memo that she must timely do utility cut-offs. She signed that memo to acknowledge receipt. (JA 190). However, her employment record contains a second, detailed memo of that alleged meeting which she did not receive and was not signed by her. (JA 194). That would allow a reasonable inference that the memo was produced as a pretext for her firing. Mayor Herron, who was present during the meeting, told her that everything was fine and the Town would get her some help. He then executed an affidavit stating that he was present at the Town offices for an extended period during the time between the March 25 meeting and the May 14 council meeting and observed her not doing her job and being insubordinate to McGothlin. (JA 200). However, at deposition he did not state that he made those observations and admitted that he was aware of nothing that Marilyn did during that period to justify her firing. (JA 231).

The totality of those circumstances would allow a jury to conclude that even if McGothlin had warned Marilyn on March 25 to improve her job performance, she had done so in the interim. The only change that occurred was the events of the May 14 Council meeting. The factual issue is whether she was fired because of her husband's First Amendment speech or her give and take with Mr. McGothlin at

the meeting, responding to things he said about her. That factual issue is a genuine issue of fact which is in dispute.

The jury could reasonably look at Marilyn's job performance following the March 25 meeting, could consider whether Marilyn spoke truthfully about McGothlin having treated her in a sexist manner and called her derogatory names, whether McGothlin provoked her to respond at the Council meeting, and whether both McGothlin and Herron manufactured accusations to justify her firing. Clearly, manufactured "evidence" would itself be proof of pretext.

**E.**

**THE TOWN IS LIABLE FOR MCGOTHLIN'S
ACTS TAKEN AS PART OF OFFICIAL POLICY**

The Trial Court held that the Town would not be liable for McGothlin's firing of Altizer because his act was not directed by the Town Council and was not the result of official policy. (JA 367, citing *Riddick v. Sch. Bd. of the City of Portsmouth*, 238 F.3d 518, 522 (4th Cir. 2000)). The Trial Court found that McGothlin was not the "final" decision maker in firing Altizer because she had the right to appeal her termination to the Town Council. (*Id.* 368)

The Trial Court erroneously interprets the governing parts of the Town Charter which does not grant the right to appeal to employees fired by the Town Manager. It only provides that right to police department employees fired by the chief of police. The Charter is found at JA 324, et seq.

16

Under § 3-91 of the Town Charter (JA 337), the Town Council has no power over Town employees and "neither the council nor any member thereof shall give orders to any subordinates of the town manager, either publicly or privately." Section 3-912 provides that the Town Manager has the full power to hire and fire and there is no grievance appeal to the Town Council other than for employees of the police department.  The Town Manger is afforded the power:

> To appoint such officers and employees as the council shall determine and authorize as are necessary for the proper administration of the affairs of the town with the power to discipline and remove any such officer or employee, but he shall report each appointment of any officer having supervisory or administrative authority to the council for confirmation at the next meeting thereof following any such appointment. <u>The chief of police so appointed by the town manager and confirmed by the council shall have the power to discipline his subordinates and with the approval of the town manager to discharge any subordinate for just cause. Any officer or employee so removed shall have the right of appeal to the council</u> within thirty days after his removal and after notice to the town manager. The action of the council on such appeal shall be final. (1971, c. 113) (emphasis added).

The Charter provides that any employee "so removed" has the right of appeal to the council.  The employee "so removed" is the employee discharged by the police chief with the approval of the town manager.  That limitation is consistent with what Tim Altizer was told by the Town Manager, that McGothlin's decision was final. (Affidavit of Tim Altizer, paragraph 2, JA 291).

The decision to supervise and fire municipal employees was given solely to the Town Manager.  "If the decision to adopt that particular course of action is

properly made by that government's authorized decisionmakers, it surely represents an act of official government "policy" as that term is commonly understood." *Pembaur v. City of Cincinatti*, 475 U.S. 469, 481. (1989). *Pembaur* also recognizes that municipal liability may be based, not only on policy, but on <u>custom</u>. " A § 1983 plaintiff thus may be able to recover from a municipality without adducing evidence of an affirmative decision by policymakers if able to prove that the challenged action was pursuant to a state "custom or usage." *Id.*, p.91.

The Town Manager clearly was afforded the final decision making authority with regard to the discharge of employees. The Trial Court erred in granting summary judgment to the Town.

## II.

### THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON THE STATE LAW WRONGFUL DISCHARGE CLAIM

The trial Court granted summary judgment on the state law wrongful discharge claim, finding that Altizer had failed to show that her discharge violated a public policy established by a Virginia statute. (Opinion, p. 19, JA 370). In reaching that conclusion, the Trial Court first properly identified the requirements for the claim under Virginia law:

> [T]he Supreme Court of Virginia, in *Bowman v. State Bank of Keysville*, 331 S.E.2d 797 (Va. 1985), created "an exception to the employment-at-will doctrine limited to discharges which violate *public* policy, that is, the policy underlying existing laws designed to

18

protect the property rights, personal freedoms, health, safety, or welfare of the people in general." *Miller v. SEVAMP, Inc.*, 362 S.E.2d 915, 918 (Va. 1987). This exception only applies in narrow circumstances, and "[a]s a threshold matter, a plaintiff attempting to assert a wrongful discharge claim pursuant to *Bowman* must identify a Virginia statute that the employer-defendant violated by terminating the plaintiff." *Storey v. Patient First Corp.*, 207 F. Supp. 2d 431, 450 (E.D. Va. 2002); *see also McCarthy v. Tex. Instruments, Inc.*, 999 F. Supp. 823, 829 (E.D. Va. 1998)("A *Bowman* claim must find root in a *state* statute.").(JA 369).

Altizer based her claim on Va. Code § 15.2-1512.4 which provides:

Nothing in this chapter shall be construed to prohibit or otherwise restrict the right of any local employee to express opinions to state or local elected officials on matters of public concern, nor shall a local employee be subject to acts of retaliation because the employee has expressed such opinions.

For the purposes of this section, "matters of public concern" means those matters of interest to the community as a whole, whether for social, political, or other reasons, and shall include discussions that disclose any (i) evidence of corruption, impropriety, or other malfeasance on the part of government officials; (ii) violations of law; or (iii) incidence of fraud, abuse, or gross mismanagement.

The Trial Court found that Altizer had not shown that the Tim Altizer address to the Town Council involved a matter of public concern. Specifically, the Trial Court focused on whether Altizer had shown that the delays in transmitting the deferred compensation withheld from her was unreasonable and, therefore, "wrongful." " [T]he plaintiff lacks factual or legal support for her position that the delay constituted wrongdoing, which is necessary to trigger protection under the

limited definition of "matters of public concern" contained in section 15.2-1512.4."
(Opinion, p. 20, JA 371).

That conclusion is error for several reasons. First, the statute does not
require that the speech relate to alleged "wrongdoing." Rather, it protects speech
on "matters of interest to the community as a whole, whether for social, political,
or other reasons, and shall include" discussions which involve what the Trial Court
categorizes as wrongdoing. The definition of "matters of public concern" is not
limited to the examples delineated.

Secondly, Altizer has addressed above how Tim Altizer was addressing
matters of "public concern" as identified in federal caselaw arising under the First
Amendment. She will not repeat that argument here but will point out that there is
no indication that the definition of the term used in the Virginia statute is narrower
than federal law. In fact, it is conterminous. "Speech involves a matter of public
concern when it involves an issue of social, political, or other interest to a
community." *Kirby v. City of Elizabeth City*, 388 F.3d 440, 446 (4th Cir. 2004).

Third, the Trial Court errs by limiting Altizer's argument that McGothlin
committed wrongdoing by limiting the examination to the failure to timely transmit
the payments. That view ignores the key factor, which is plainly established in the
record and not denied by the Defendants, that during the periods that the payments
were held and not transmitted the Town was using the money to pay other

20

obligations. The bank account did not have sufficient funds to cover the checks written because the Town was paying other obligations out of that account. Moreover, during all that period, the Town had sufficient funds in another account to cover the payments of the deferred compensation checks. Those funds were under the control of the Town Manager who could use them to pay the Town's obligations.

In addition to those facts, the Town Council publicly had approved the checks which were written and signed but held for months by the Town Manager. That held out to the citizens of the Town that the municipality had the funds to cover its expenses and affirmatively hid the Town's true financial condition.

If such were not criminal acts nor "malfeasance," it was "impropriety" or "gross mismanagement." The Trial Court's too narrow view of the Virginia statute was erroneous and its grant of summary judgment cannot stand.

## CONCLUSION

Marilyn Altizer has demonstrated the Trial Court failed to afford her the benefit of reasonable inferences which might be drawn from the evidence adduced below. Genuine issues of material fact exist which make the grant of summary judgment error. Altizer respectfully requests that the judgment below be reversed and the case remanded for trial.

21

## REQUEST FOR ORAL ARGUMENT

Appellants respectfully request the opportunity to argue this appeal before a panel of the Court.  The issues involved in the appeal are such that oral argument will serve the Court's understanding of Appellants' arguments.

Respectfully Submitted,

MARILYN ALTIZER

BY COUNSEL    /s/ Michael A. Bragg
Michael A. Bragg (VSB No. 16797)
Bragg Law
P. O. Box 1866
Abingdon, Virginia 24212
(276) 628-9160

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)
### Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

> this brief contains 4,963 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

> this brief has been prepared in a proportional spaced typeface using Microsoft Word in 14 point Times New Roman.

Dated:  July 13, 2015          /s/ Michael A. Bragg
                               Michael A. Bragg

                               *Counsel for Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on July 13, 2015, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF System, which will send notice of such

filing to all registered users.

The necessary filing and service were performed in accordance with the

instructions given to me by counsel in this case.

/s/ Shelly N. Gannon
Shelly N. Gannon
GIBSON MOORE APPELLATE SERVICES, LLC
421 East Franklin Street, Suite 230
Richmond, VA  23219